*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 28, 2022

Plaintiff-Appellee,

v                                                                 No. 358080
                                                                  St Clair Circuit Court
CHARLES ROBERT SHORT,                                             LC No. 20-002232-FC

Defendant-Appellant.

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant, Charles Short, pleaded guilty to two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, two counts of assault with intent to commit sexual penetration, MCL 750.520g(1), and two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e. The trial court sentenced him as a third offense habitual offender, MCL 769.11, to 18 to 30 years' imprisonment for his CSC-II convictions; 13 to 20 years' imprisonment for his assault convictions; and two to four years' imprisonment for his CSC-IV convictions. Short appeals by leave granted[1] the trial court's sentencing decision. He argues that the out-of-guidelines sentence for his CSC-II convictions is disproportionate to the seriousness of the offense, and that the trial court did not sufficiently articulate its basis for imposing an out-of-the-guidelines sentence. Because the trial court did not abuse its discretion in sentencing Short, we affirm.

## I. BASIC FACTS

In July or August 2020, Short began sexually assaulting a 14-year-old girl. The first assault occurred after he gave the girl marijuana for free. Afterward, he would not leave her alone. In a forensic interview, she explained that he would constantly message her and ask to see her. He would tell her that he was outside her house and would not leave until she came out. Although she blocked him on an instant messaging app, he would drive up and down her street until she came

---

[1] *People v Short*, unpublished order of the Court of Appeals, entered September 14, 2021 (Docket No. 358080).

outside. He threatened to tell her parents about her marijuana use unless she complied with his demands.

The first time she went outside to meet him, he told her that "nothing was going to happen." Instead, he pulled her to his truck. The girl tried to pull away, but realized that she would be unsuccessful because she was physically weaker. He took off her sweatpants, told her to "be quiet and take it," pulled down his pants and penetrated her vagina with his penis while holding both of her wrists in one hand. When he was finished, he told the girl that it was not "so bad and it felt nice." He then left. The girl explained that she was "numb" and "shut everything out." Inside her house, she vomited and showered. She also noticed a bruise on her inner thigh.

That was not her last encounter with Short. He continued to call her and when she blocked his cellphone number, he created new ones to contact her. Eventually, she met him outside again. He told her that nothing would happen. This time, however, he squeezed her breasts over and under her clothes, grabbed her throat so she could not breathe, covered her mouth to prevent her from telling him to stop, and held her wrists to get her to stop moving. She told him that she did not like what he was doing, but he did not stop. Like the first encounter, he penetrated her vagina with his penis.

That encounter was followed by approximately three or four more sexual assaults. The girl explained that each was similar to the first and would result in Short penetrating her vagina with his penis. Sometimes he would take her away from her home in his vehicle; other times, he would just rape her in his truck outside her house. The last sexual assault occurred approximately one week before she started school in September 2020. The girl disclosed that after penetrating her vagina with his penis, Short put his pants on and asked "if she loved him and if they could be together in the future." The girl told him "yeah" because she did not want to make him angry. She stated that when Short was angry with her "she could feel greater force in her stomach while he was raping her, and it was painful." She was 15 years old when the last assault happened.

After school started, Short continued to repeatedly contact her. He eventually threatened to go to her house and knock on the door if she did not have sex with him. At that point, the girl disclosed the abuse to a friend. That friend went to her house and, when he arrived, had an altercation with Short. Law enforcement arrived and, during their investigation of the altercation between Short and the girl's friend, Short's abuse of the girl was disclosed.

Short met with law enforcement in October 2020. He denied having sexual intercourse with the girl. Nevertheless, Short was arrested, arraigned, and released on bond. A condition of his bond was to not have any contact with the girl, her family, or anyone under the age 18. On March 16, 2021, however, the girl received a voicemail from a man who did not identify himself. He told her to call him, pleaded that they should "talk about this," and stated that "it doesn't have to be like this." Based on his voice, the girl identified the caller as Short. Thereafter, the prosecution filed a bond violation notice.

As noted above, Short pleaded guilty to several offenses in exchange for the prosecution's agreement to dismiss one count of first-degree criminal sexual conduct and four counts of third-degree criminal sexual conduct. There was no sentencing agreement. As part of his plea, Short admitted that he knew the girl was 15, that he had picked the girl up at her home and driven her to

a secluded location to have "sexual contact," and that he had threatened to tell her family about her marijuana use if she did not cooperate with him. He stated that he touched her breasts, buttocks, and vaginal area, and he admitted that, on two occasions, he used force to accomplish the sexual assaults. He denied penetrating the girl's vagina with his penis, but stated that he had used his fingers to penetrate her vagina.

Short's minimum sentencing guidelines range for the CSC-III convictions was 58 to 171 months. The trial court, however, determined that an out-of-the-guidelines sentence was appropriate. This appeal by leave granted followed.

## II. SENTENCE

### A. STANDARD OF REVIEW

Short argues that the trial court abused its discretion by imposing an outside-the-guidelines sentence. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citations omitted). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *Id.* (quotation marks and citation omitted, alteration in original). "[T]he relevant question for appellate courts reviewing for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *Id.* (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted).

### B. ANALYSIS

Michigan's sentencing guidelines are advisory. *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). Nevertheless, an outside-the-guidelines sentence must conform with the principle of proportionality. *Dixon-Bey*, 321 Mich App at 521. "Under this principle, the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id.* (quotation marks and citations omitted). Several factors may be considered when applying the proportionality standard, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted).]

The trial court provided a detailed and thorough explanation for its decision to impose an out-of-the-guidelines sentence. The court first considered the goals of sentencing, explaining:

> I would indicate that I think sentencing in a criminal case is set to accomplish three different goals: First, it is punitive in nature. It is, it seeks to punish the criminal behavior. Secondly, it's goal should be rehabilitative. And third is to protect society. The fact that [Short's lawyer] has to, during the course of his elocution on behalf of his client point out that Mr. Short's most recent sex offense is more than ten years old is problematic to me because prior to this case that I have Mr. Short for in front of me today, Mr. Short has a criminal sexual conduct, fourth degree, that was adjudicated on May 31, 1995. He has a criminal sexual conduct in the fourth degree, for which he pled guilty as an adult on September 28, 1999. And then he has another criminal sexual conduct in the fourth degree of which he plead guilty to on January 27, 2006. I don't want the case that I am not presiding over to be the next most recent case the next time that Mr. Short is out and decides to prey on a young girl.

> And what is so disturbing about this case is this is an already vulnerable victim. This particular victim's father is incarcerated in the Michigan Department of Corrections for molesting her sister, this victim's sister. This is a very vulnerable 15-year-old girl of which he took advantage and preyed on. The punishment in this case could be any number of years and I agree with [the prosecution] that 14 years which is the maximum minimum penalty under the terms of these guidelines does not seem to be enough in this particular case.

> As it relates to rehabilitation, there are certain cases that come before this Court where I don't know that there is any rehabilitative quality whatsoever. Mr. Short had the ability to be rehabilitated in 1994. He had the ability to be rehabilitated in 1998. And he had the ability to be rehabilitated in . . . 2006. And he has never been rehabilitated. In fact, what he does is he seems to escalate his behavior. With that escalation of behavior, I believe that the third prong as it relates to the purposes behind sentencing is the protection of society and when there is a threat to society, I believe that it is my obligation to protect that society from someone that deems an open and severe threat to the same.

> Mr. Short through his actions has shown time and time again that he is in fact a threat to this society. I give criminal defendants an opportunity. In fact, they get the first chance to say no. What is contained in this presentence report is wrong. It's inaccurate. Are [sic] there were no corrections made. What I know is according to this PSI, that the victim in this case would receive texts from the Defendant, he would threaten her that he we [sic] come up and knock on the door and talk to her parents if he didn't, if she didn't come out to his truck. This began when she was 14 years of age. And he would rape her. I'm just astounded by the behavior of this Defendant.

Thereafter, the court determined that an out-of-the-guidelines sentence was reasonable in this case. The court reasoned:

The following aspects of this case are not adequately accounted for in the guidelines and they are going to lead me to impose a sentence out of the recommended guideline range. Number one, the seriousness of the offense. This is a series of rapes that occurred when the victim in this case was 14 years of age. The Defendant used manipulation and threatening techniques to continue to perpetrate rapes upon a 14-year-old girl and then a 15-year-old girl, same person, because it went on for so long. This is a girl that has already been subjected to having her sister be a victim of sexual abuse to the point where she now has to go on and live with her grandmother and grandfather because her dad is in prison for sexual abuse against her own sister. He fed her marijuana, and then threatened to use the fact that he gave her marijuana against her if she did not submit to sexual crimes against her. Factors that are inadequately considered by the guidelines and factor three are in essence the same. There is no rehabilitation for this Defendant. This defendant has been convicted not once, not twice, but three times of criminal sexual conduct and the victimization continues to occur. Beyond that, he is ramping it up. He is now into full out raping 14-year-old girls. And there is no rehabilitation from that, not when he has had ample opportunity to over the course of years to rehabilitate himself. He has found a pattern—he has found a pattern of behavior in himself wherein he is more manipulative, he is more threatening, and he is doing it in a more secretive nature. And I do not believe that those are factors that are considered by this guideline range.

So, as a result of that, I do not believe that the sentencing guideline range does adequately take into account the factors that are present in this case. I do not believe that Mr. Short can be rehabilitated and I think this Court has an obligation to protect society and its young ladies from Mr. Short.

Short argues that the trial court only provided general reasons for imposing an out-of-the-guidelines sentence and that the trial court failed to articulate specific reasons for the out-of-the-guidelines sentence. We disagree. The court articulated specific and detailed reasons to support its decision to impose an out-of-the-guidelines sentence and those reasons also support the extent of the departure in this case.

Next, Short argues that although the court stated that Short was targeting young girls, the court erred by not also considering that when Short committed a sexual offense in 1994 he was only 13 years old and when he committed a sexual offense in 1998 he was only 17 years old. The trial court, however, was not required to view Short's age at the time he committed his earliest offenses as a mitigating factor. The court's reasoning instead accounted for the fact that Short had been sexually abusing underage girls between 1994 and 2020. Despite being sentenced for sexual offenses in 1994, 1998, and 2006, Short was not rehabilitated and continued his pattern of sexually assaulting young girls. And, although the sentencing guidelines considered the fact of his prior convictions relating to his earlier victims, as recognized by the trial court, the guidelines did not adequately account for the similarities between his prior offenses and the current offense. Nor did it account for the serial nature of the sexual abuse Short inflicted upon multiple underage girls.

Short next argues that offense variable (OV) 13, which addresses a continuing pattern of criminal behavior, was scored at 25 points. OV 13 must be scored at 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). When scoring OV 13, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Although this OV addresses the fact that Short committed at least 3 offenses against a person within a 5-year period, it does not account for the recurring nature of the sexual abuse against the girl in this case. The girl disclosed that he penetrated her vagina with his penis on five or six occasions. He touched her breasts over and under her clothing. He also grabbed her throat so she could not breathe. On this record, the trial court did not clearly err by finding that the guidelines did not adequately account for the aggravating details in Short's particular pattern of continuing criminal behavior.

Short also asserts that the vulnerability of the victim was also adequately accounted for in the sentencing guidelines. He notes that OV 10, which addresses exploitation of a vulnerable victim, was scored at 15 points. Fifteen points should be scored under OV 10 if "[p]redatory conduct was involved." MCL 777.40(1)(a). The predatory conduct in this case was extensive. Short provided the girl with marijuana for free and then threatened to expose her substance use to her family if she did not have sex with him. He contacted her repeatedly and badgered her to submit to his demands. She attempted to block him on social medical and on her phone, but he created new numbers to thwart her attempts to avoid him. Moreover, to further manipulate and intimidate her, he drove by her house or would park outside it and not leave. Once she capitulated to his demands, he overcame her physical resistance using superior size and strength. Given the extent of his behavior, the trial court did not clearly err by finding that the guidelines did not adequately account for his manipulation of a vulnerable victim.

Short argues that the trial court improperly discounted the fact that Short disclosed he was sexually abused by his grandfather when he was a child. Yet, he acknowledges that being a victim of sexual abuse does not excuse his sexual assault of his victim in this case. Moreover, Short stated at sentencing in a prior case that he was disclosing that abuse for the first time. Subsequently, in this case, he also claimed to be disclosing his abuse for the first time. This supports an inference that he was not truthful regarding his alleged childhood trauma and that he was instead attempting to use it to evoke sympathy for a lighter sentence. The court did not clearly err by not exercising its discretion to treat the prior abuse as a mitigating factor.

Finally, Short asserts that the trial court determined that he lacked rehabilitative potential despite the fact that a psychological evaluation was not conducted. The court, however, found that Short lacked rehabilitative potential based on his history of serial sexual abuse of underage girls. Given that there are decades between his first offense and the current offense, the court's finding is supported by a preponderance of the evidence. It need not also be supported by a psychological evaluation.

On this record, the sentence imposed by the trial court was proportionate and not unreasonable.  Short is not entitled to resentencing.[2]

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

---

[2] In light of our resolution, we need not address Short's argument that he should be resentenced before a different judge.